UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LAURA M. G.,[1]<br><br>　　　　　Plaintiff,<br><br>　v.<br><br>ANDREW M. SAUL, Commissioner of Social Security,<br><br>　　　　　Defendant. | Case No. CV 19-10114 PVC<br><br>**MEMORANDUM DECISION AND ORDER** |

Laura M. G. ("Plaintiff") appeals from the final decision of the Commissioner of Social Security ("Commissioner" or "Agency") denying her application for Disability Insurance Benefits ("DIB"). The parties consented pursuant to 28 U.S.C. § 636(c) to the jurisdiction of the undersigned United States Magistrate Judge. (Dkt. Nos. 11–13). On May 20, 2020, the parties filed a Joint Stipulation outlining their respective positions. (Dkt. No. 18). For the reasons stated below, the decision of the Commissioner is AFFIRMED.

---

[1] The Court partially redacts Plaintiff's name in compliance with Federal Rule of Civil Procedure 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

# I.

# PROCEDURAL HISTORY

On November 13, 2012, Plaintiff protectively filed an application for DIB, pursuant to Title II of the Social Security Act (the "Act"), alleging a disability onset date of April 28, 2012.[2] (AR 128, 145). The Commissioner denied Plaintiff's application initially, and thereafter an Administrative Law Judge ("ALJ") issued an unfavorable decision. (AR 15–24, 54–75). After the Appeals Council denied Plaintiff's request for review (AR 1–6), Plaintiff sought judicial review in this Court. *See Laura M. G. v. Colvin*, No. 16 CV 0652 (C.D. Cal. filed Jan. 29, 2016). While the matter was on appeal, Plaintiff filed a subsequent claim for Title II benefits. (AR 861, 881).

On September 27, 2016, the Court issued an order reversing and remanding the matter for further proceedings. (AR 812–24). Specifically, the Court found that the ALJ failed to resolve the ambiguities and inconsistencies in the State agency physician's opinions and to address and explain his rejection of the State agency physician's functional limitations. (AR 824). Upon remand, the Appeals Council vacated the ALJ's decision and remanded the case to an ALJ for further proceedings consistent with this Court's September 2016 Order. (AR 881–82). The Appeals Council also directed the ALJ to consolidate the two claims files, associate the evidence, and issue a new decision on the consolidated claims. (AR 881).

The Commissioner denied the subsequent claim initially, and on September 14, 2017, the ALJ issued an unfavorable decision on the consolidated claims. (AR 861–77, 887–99). On July 17, 2018, the Appeals Council again vacated the ALJ's decision and remanded the claims, finding that the ALJ miscalculated Plaintiff's last date insured and

---

[2] On August 28, 2017, Plaintiff amended her alleged onset date to February 17, 2015. (AR 767–68, 887).

failed to consolidate the two claims.  (AR 909–11).  On remand, the Appeals Council assigned the claims to a new ALJ and ordered the ALJ to consolidate the claims, confirm the date last insured, further evaluate Plaintiff's mental impairments, give further consideration to Plaintiff's residual functional capacity ("RFC") during the entire period at issue, and obtain supplemental evidence from a vocational expert ("VE") to clarify the effect of the assessed limitations on Plaintiff's occupational base.  (AR 910).

On March 5 and May 31, 2019, Plaintiff, represented by counsel, appeared before the new ALJ and testified on the consolidated claims.  (AR 677–734, 769–84).  The ALJ issued an adverse decision on September 24, 2019, finding that Plaintiff was not disabled because there were jobs that existed in significant numbers in the national economy that she was capable of performing.  (AR 635–54).  Plaintiff did not file written exceptions with the Appeals Council, and the Appeals Council did not review the September 2019 adverse decision.[3]  This action followed on November 26, 2019.  (Dkt. No. 1).

## II.

## ISSUE PRESENTED

On appeal, Plaintiff raises a single issue: whether the ALJ articulated specific and legitimate reasons for rejecting the opinions of Dr. Deaver.  (Joint Stip. at 5).[4]

---

[3] "[W]hen a case is remanded by a Federal court for further consideration, the decision of the administrative law judge will become the final decision of the Commissioner after remand on [the] case unless the Appeals Council assumes jurisdiction of the case."  20 C.F.R. § 404.984(a).

[4] Plaintiff withdrew a separate issue as to whether the ALJ articulated specific and legitimate reasons for rejecting the opinions of Dr. Lamm.  (Joint Stip. at 5).

3

## III.

## FACTUAL BACKGROUND

Plaintiff was born on February 17, 1965, and was 54 years old when she appeared before the ALJ on March 5 and May 31, 2019. (AR 128, 680). Plaintiff is a high school graduate and lives at home with her husband. (AR 680, 687, 1291, 1323). She last worked on April 30, 2012, as a business systems analyst. (AR 680, 1290–91). Plaintiff alleges disability due to major depression, anxiety, and panic attacks. (AR 1290).

### A. Plaintiff's Subjective Statements

On March 29, 2016, Plaintiff submitted an Adult Function Report. (AR 1323–31). She asserted an inability to concentrate due to anxiety, panic attacks, and severe depression. (AR 1323). She requires reminders to take care of personal hygiene and her medications. (AR 1325). She is unable to cook, pay bills, count change, handle bank accounts, or do household chores because of an inability to concentrate. (AR 1325, 1327). While Plaintiff asserted an inability to drive (AR 1327), at her March 2019 hearing, she acknowledged that she does drive occasionally (AR 687). She does not socialize but has no difficulty getting along with family, friends, neighbors, or others. (AR 1326, 1328).

### B. Relevant Treatment History

Plaintiff began treating with Marcia Lamm, Ph.D., a licensed clinical psychologist, in October 2012. (AR 1513). In November 2014, Dr. Lamm noted that Plaintiff was making progress in treatment, with improvements in mood and affect. (AR 1519). In January 2015, Dr. Lamm noted that Plaintiff continues to make progress with her outpatient psychotherapy treatments, with improvements in mood and affect and reduced tearfulness. (AR 1517). Nevertheless, Plaintiff's psychological status remains fragile and

4

1  she must continue psychotherapy treatment to reduce depression and anxiety and to
2  increase daily activities, productivity, and quality of life.  (AR 1517).  Dr. Lamm assessed
3  major depressive disorder, moderate and improved; and sleep disorder, insomnia type.
4  (AR 1517).  In July and November 2016, Plaintiff reported doing poorly.  (AR 1498,
5  1500).  Upon examination, Dr. Lamm noted that Plaintiff was labile, tearful and
6  dysphoric, with a flattened affect.  (AR 1498, 1500).  Mental status examinations
7  remained unchanged from January 2017 through March 2018, generally indicating
8  improved symptoms with psychotherapy treatment.  (AR 1716, 1718, 1728, 1741, 1755).

### C.   Relevant Medical Opinions

On June 5, 2013, David Deaver, Ph.D., a nonexamining state agency psychological consultant, reviewed the medical record and found that Plaintiff's depression and anxiety were severe medically determinable impairments.  (AR 64).  He concluded that she has moderate difficulties in maintaining concentration, persistence or pace.  (AR 64).  In terms of Plaintiff's mental RFC, Dr. Deaver assessed that she was moderately limited in her ability to carry out detailed instructions, maintain attention and concentration for extended periods, work in coordination with or in proximity to others without being distracted by them, and to interact appropriately with the general public.  (AR 68–69).  Thus, Dr. Deaver opined that Plaintiff "would likely need a low stress environment without a great deal of contact with others but is capable of following easy 1, 2 step directions."  (AR 69).

On May 31, 2016, Mary Bridges, M.D., performed a complete psychiatric evaluation on behalf of the Commissioner.  (AR 1669–74).  Dr. Bridges reviewed available medical records, including those from Dr. Lamm, Plaintiff's treating psychologist.  (AR 1669).  Dr. Bridges found Plaintiff "evasive" and to have a "passive and aggressive manner of relating."  (AR 1669, 1673).  Dr. Bridges could not exclude that Plaintiff was "exaggerat[ing] [her] symptoms for financial gain or malingering."  (AR

1673). Plaintiff minimized her functioning, evaded substance abuse issues, and displayed decreased effort at times. (AR 1669, 1671). A mental status examination was largely unremarkable. (AR 1672–73). Dr. Bridges diagnosed depressive disorder, NOS; adjustment disorder with mixed anxiety and mood disturbance; cognitive disorder due to general medical condition, sleep disturbance, pain, and effects of medication; and personality disorder, NOS, and assigned a Global Assessment of Functioning (GAF) score of 78.[5] (AR 1673). Dr. Bridges found that Plaintiff has no difficulty maintaining composure and even temperament, maintaining social functioning, focusing and maintaining attention, and in concentration, persistence and pace. (AR 1674). Plaintiff is "intellectually and psychologically capable of performing activities of daily living (ADLs)." (AR 1674). Dr. Bridges opined that Plaintiff would have no limitations performing simple and repetitive tasks, performing detailed and complex tasks, performing work activities on a consistent basis without special or additional supervision, completing a normal workday or workweek due to her mental condition, accepting instructions from supervisors and interacting with coworkers and with the public, and no difficulties handling the usual stresses, changes, and demands of gainful employment.

---

[5] "A GAF score is a rough estimate of an individual's psychological, social, and occupational functioning used to reflect the individual's need for treatment." *Vargas v. Lambert*, 159 F.3d 1161, 1164 n.2 (9th Cir. 1998). The GAF includes a scale ranging from 0–100, and indicates a "clinician's judgment of the individual's overall level of functioning." *American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders* 32 (4th ed. text rev. 2000) (hereinafter *DSM–IV*). According to *DSM–IV*, a GAF score between 71 and 80 suggests that if symptoms are present, they are "transient and expectable reactions to psychosocial stressors (e.g., difficulty concentrating after family argument)" and cause "no more than slight impairment in social, occupational or school functioning (e.g., temporarily falling behind in schoolwork)." *Id.* 34. "Although GAF scores, standing alone, do not control determinations of whether a person's mental impairments rise to the level of a disability (or interact with physical impairments to create a disability), they may be a useful measurement." *Garrison v. Colvin*, 759 F.3d 995, 1003 n.4 (9th Cir. 2014).

(AR 1674). Dr. Bridges concluded that Plaintiff's prognosis is good and that she would improve with active psychiatric treatment. (AR 1674).

## IV.
## DISCUSSION

### A. Standard of Review

Under 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits. "[The] court may set aside the Commissioner's denial of benefits when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." *Aukland v. Massanari*, 257 F.3d 1033, 1035 (9th Cir. 2001); *see Smolen v. Chater*, 80 F.3d 1273, 1279 (9th Cir. 1996). "Substantial evidence is more than a scintilla, but less than a preponderance." *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998). It is "relevant evidence which a reasonable person might accept as adequate to support a conclusion." (*Id.*). To determine whether substantial evidence supports a finding, the court must "consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion." *Aukland*, 257 F.3d at 1035 (citation omitted). If the evidence can reasonably support either affirming or reversing that conclusion, the court may not substitute its judgment for that of the Commissioner. *Reddick*, 157 F.3d at 720–21.

### B. The Five-Step Sequential Evaluation Process

To qualify for disability benefits, a claimant must demonstrate a medically determinable physical or mental impairment that prevents the claimant from engaging in substantial gainful activity and that is expected to result in death or to last for a continuous period of at least twelve months. *Reddick*, 157 F.3d at 721 (citing 42 U.S.C.

7

§ 423(d)(1)(A)). The impairment must render the claimant incapable of performing work previously performed or any other substantial gainful employment that exists in the national economy. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 42 U.S.C. § 423(d)(2)(A)).

To decide if a claimant is entitled to benefits, an Administrative Law Judge ("ALJ") conducts a five-step inquiry. 20 C.F.R. §§ 404.1520, 416.920. The steps are:

(1) Is the claimant presently engaged in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.

(2) Is the claimant's impairment severe? If not, the claimant is found not disabled. If so, proceed to step three.

(3) Does the claimant's impairment meet or equal one of the specific impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, the claimant is found disabled. If not, proceed to step four.

(4) Is the claimant capable of performing his past work? If so, the claimant is found not disabled. If not, proceed to step five.

(5) Is the claimant able to do any other work? If not, the claimant is found disabled. If so, the claimant is found not disabled.

*Tackett*, 180 F.3d at 1098–99; *see Bustamante v. Massanari*, 262 F.3d 949, 953–54 (9th Cir. 2001); 20 C.F.R. §§ 404.1520(b)–(g)(1), 416.920(b)–(g)(1).

The claimant has the burden of proof at steps one through four and the Commissioner has the burden of proof at step five. *Bustamante*, 262 F.3d at 953–54. Additionally, the ALJ has an affirmative duty to assist the claimant in developing the record at every step of the inquiry. (*Id.* at 954). If, at step four, the claimant meets his or her burden of establishing an inability to perform past work, the Commissioner must show

that the claimant can perform some other work that exists in "significant numbers" in the national economy, taking into account the claimant's residual functional capacity ("RFC"), age, education, and work experience. *Tackett*, 180 F.3d at 1098, 1100; *Reddick*, 157 F.3d at 721; 20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1). The Commissioner may do so by the testimony of a vocational expert (VE) or by reference to the Medical-Vocational Guidelines appearing in 20 C.F.R. Part 404, Subpart P, Appendix 2 (commonly known as "the grids"). *Osenbrock v. Apfel*, 240 F.3d 1157, 1162 (9th Cir. 2001). When a claimant has both exertional (strength-related) and nonexertional limitations, the grids are inapplicable and the ALJ must take the testimony of a VE. *Moore v. Apfel*, 216 F.3d 864, 869 (9th Cir. 2000).

### C. The ALJ's Decision

The ALJ employed the five-step sequential evaluation process and concluded that Plaintiff was not disabled within the meaning of the Act. (AR 635–54). At step one, the ALJ found that Plaintiff did not engage in substantial gainful activity from February 17, 2015, the amended alleged onset date, through December 31, 2017, her date last insured. (AR 639). At step two, the ALJ found that through the date last insured, Plaintiff's diabetes mellitus, morbid obesity with history of gastric bypass, major depressive disorder, and anxiety disorder were severe impairments.[6] (AR 639). At step three, the ALJ determined that through the date last insured, Plaintiff did not have an impairment or

---

[6] The ALJ also found that Plaintiff's medically determinable impairments of bilateral wrist tendinitis, migraine headaches, left shoulder pain, and high blood pressure did not cause more than minimal limitations in her ability to perform basic work activities and were therefore nonsevere. (AR 639).

9

combination of impairments that met or medically equaled the severity of any of the listings enumerated in the regulations.[7] (AR 639–40).

The ALJ then assessed Plaintiff's RFC and concluded that through the date last insured, she could have performed medium work as defined in 20 C.F.R. § 404.1567(c),[8] except:

> [Plaintiff] can sit up to eight hours per day, she can stand and/or walk for up to eight hours per day, and she can occasionally climb ladders, ropes or scaffolds, and can have occasional exposure to hazards (such as dangerous machinery and height). [Plaintiff] can occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl and cannot have exposure to cold temperature extremes. Further, [Plaintiff] is limited to unskilled work of no more than reasoning level one or two.

(AR 643). At step four, the ALJ found that through the date last insured, Plaintiff was unable to perform any past relevant work. (AR 652). Based on Plaintiff's RFC, age, education, work experience, and the VE's testimony, the ALJ determined at step five that through the date last insured, there were jobs that existed in significant numbers in the national economy that Plaintiff could have performed, including conveyer feeder, hand packager, and laboratory equipment cleaner. (AR 652–54). Accordingly, the ALJ found

---

[7] Specifically, ALJ considered whether Plaintiff met the criteria of Listings 12.04 (depressive, bipolar, and related disorders) or 12.06 (anxiety and obsessive-compulsive disorders) and concluded that she did not. (AR 640–43).

[8] "Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. If someone can do medium work, we determine that he or she can also do sedentary and light work." 20 C.F.R. § 404.1567(c).

10

that Plaintiff was not under a disability as defined in the Act from February 17, 2015, the amended alleged onset date, through December 31, 2017, the date last insured.  (AR 654).

### D. **Analysis**

Plaintiff contends that the ALJ failed to provide specific and legitimate reasons for rejecting the opinions of Dr. Deaver.  (Joint Stip. at 9–13, 15).  Specifically, Plaintiff argues that the ALJ failed to fully account for Dr. Deaver's opinion that she was limited to working in a "low stress environment without a great deal of contact with others but capable of following 1, 2 step directions."  (*Id.* at 10).  Despite Dr. Deaver's opinion predating the amended alleged onset date by almost two years, the ALJ considered the opinion but gave it only "slight weight."  (AR 647).  Specifically, the ALJ found Dr. Deaver's opinion "generally consistent with Dr. Bridges'[s] opinion.  However, Dr. Deaver's opinion was issued two years prior to [Plaintiff's] amended alleged onset date."  (AR 647) (citation omitted).

An ALJ must take into account all medical opinions of record.  20 C.F.R. §§ 404.1527(b), 416.927(b).  The regulations "distinguish among the opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining physicians)."  *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995).  "Generally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing [(nonexamining)] physician's."  *Holohan v. Massanari*, 246 F.3d 1195, 1202 (9th Cir. 2001); *accord Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014).  "The weight afforded a non-examining physician's testimony depends 'on the degree to which they provide supporting explanations for their opinions.'"  *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1201 (9th Cir. 2008) (quoting 20 C.F.R. § 404.1527(c)(3)).  The ALJ

11

1  also evaluates the degree to which the opinion of a nonexamining physician "consider[ed]
2  all of the pertinent information in [a claimant's] claim, including medical opinions of
3  treating and other examining sources. 20 C.F.R. § 404.1527(c)(3).
4
5       The ALJ's decision giving slight weight to Dr. Deaver's opinion is supported by
6  substantial evidence. First, more weight is generally afforded to the opinion of an
7  examining physician—such as Dr. Bridges—than to a nonexamining source's opinion.
8  *Garrison*, 753 F.3d at 1012. Second, Dr. Deaver based his opinion on medical evidence
9  submitted in 2012 and early 2013 (AR 66), at least two years prior to Plaintiff's February
10 2015 amended alleged onset date. This evidence has little probative value as to whether
11 Plaintiff was disabled between February 17, 2015, her amended alleged onset date, and
12 December 31, 2017, her date last insured. *See Carmickle v. Comm'r, Soc. Sec. Admin.*,
13 533 F.3d 1155, 1157–58, 1165 (9th Cir. 2008) (finding that medical opinions that predate
14 the alleged onset of disability—even by a few weeks—are of "limited relevance");
15 *Burkhart v. Bowen*, 856 F.2d 1335, 1340 n.1 (9th Cir. 1988) (medical opinion is not
16 probative when it predates onset date); *Burkett v. Berryhill*, 732 F. App'x 547, 551 (9th
17 Cir. 2018) ("Evidence concerning [the claimant's] symptoms and limitations outside the
18 alleged period of disability does not qualify as significant or probative."); *Warzecha v.
19 Berryhill*, 692 F. App'x 859, 860 (9th Cir. 2017) ("The Commissioner did not err in
20 failing to include a prior examination in the administrative record because the examination
21 significantly predated [the claimant's] alleged onset date of disability."); *Gunderson v.
22 Astrue*, 371 F. App'x 807, 809 (9th Cir. 2010) (ALJ may properly discount medical
23 opinion given nearly two year prior to alleged onset date); *cf. Williams v. Astrue*, 493 F.
24 App'x 866, 868 (9th Cir. 2012) (while medical evidence predating alleged onset date is of
25 limited relevance, ALJ must still "consider" it). Nevertheless, Plaintiff argues that she
26 amended her alleged onset date to coincide with her 50th birthday, "not because of some
27 medical event." (Joint Stip. at 11). However, regardless of why Plaintiff amended her
28 alleged onset date to February 17, 2015, she must still establish that she was disabled

during the relevant period, and evidence that predates the alleged onset date is of limited probative value, especially compared to the substantial evidence available after February 2015. (AR 641–43, 645–52) (ALJ discussing evidence gathered during the relevant period). Therefore, because the opinion of a nonexamining physician is only as reliable as the evidence he reviewed in forming his opinion and Dr. Deaver reviewed *no* evidence during the relevant period, the ALJ properly gave Dr. Deaver's opinion only slight weight.

Finally, the ALJ properly gave more weight to Dr. Bridges's opinion because it was consistent with the course of treatment during the relevant period, especially taking into account the treating notes of Dr. Lamm, Plaintiff's treating psychologist. (AR 648–49). As noted above, because a consultative examiner has the opportunity to examine the claimant, a consultative examiner's opinion generally carries more weight than a nonexamining physician's opinion. *Garrison*, 759 F.3d at 1012. Plaintiff does not appear to dispute the weight given to Dr. Bridges's opinion; instead, she argues that the ALJ's decision was internally inconsistent. (Joint Stip. at 11). Plaintiff contends that "[i]f the ALJ intended to give weight to the opinions of Dr. Bridges, the only logical conclusion would be a non-severe mental impairment." (*Id.*). But Dr. Bridges diagnosed depression and anxiety, which the ALJ found were severe impairments. (*Compare* AR 639, *with id.* 1673). And, as the Ninth Circuit has observed, there exists "no authority to support the proposition that a severe mental impairment must correspond to limitations on a claimant's ability to perform basic work activities." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228–29 (9th Cir. 2009). In any event, the ALJ did not give controlling weight to Dr. Bridges's opinion. Indeed, in finding that Plaintiff was moderately limited with regard to concentrating, persisting or maintaining pace, and mildly limited in understanding, remembering or applying information, interacting with others, and adapting or managing herself, the ALJ gave more weight to Plaintiff's subjective statements than to Dr. Bridges's evaluation. (AR 641–43). For this reason, the ALJ limited Plaintiff to unskilled work of no more than reasoning one or two. (AR 643, 651–

52). However, in light of Dr. Bridges's largely unremarkable findings, the RFC did not include any further mental limitations, including those assessed by Dr. Deaver. Thus, the ALJ's assessment of Dr. Bridges's opinion was not internally inconsistent.

In sum, because the nonexamining physician relied on medical evidence that predated the alleged onset date by two to three years, the ALJ properly gave only slight weight to the physician's opinion. Moreover, the ALJ's decision to give more weight to the consultant who examined Plaintiff during the relevant time period was supported by substantial evidence. Accordingly, no remand is required.

## V.
## CONCLUSION

Accordingly, IT IS ORDERED that Judgment be entered AFFIRMING the decision of the Commissioner. IT IS FURTHER ORDERED that the Clerk of the Court serve copies of this Order and the Judgment on counsel for both parties.

DATE: September 8, 2020

PEDRO V. CASTILLO
UNITED STATES MAGISTRATE JUDGE